UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
                                                    :

CBS OPERATIONS INC.,                         :

                                :

                       Plaintiff,          :    Civil Action No. 16 Civ. 9291 (DAB)

                                :

                -against-            :

                                :    **AMENDED COMPLAINT**

COMEDYMX LLC, COMEDYMX INC., and  :
EDWARD HELDMAN III               :

                                :

                     Defendants.      :

--------------------------------------------------------X

      Plaintiff CBS Operations Inc. ("CBS"), by its attorneys Loeb & Loeb LLP, as and for its

complaint against Defendants ComedyMX LLC ("CMXLLC"), ComedyMX Inc. ("CMXI") and

Edward Heldman III ("Heldman"), allege as follows:

## NATURE OF THE ACTION

      1.     This is an action for copyright infringement arising from Defendants'

unauthorized and willful infringement of CBS's famous television series *The Andy Griffith Show*

over the Internet, primarily through dissemination of the show's episodes on the popular video

sharing site www.youtube.com ("YouTube").

## JURISDICTION AND VENUE

      2.     This is a civil action seeking damages and injunctive relief for copyright

infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.*

      3.     This Court has original subject matter jurisdiction over all claims in this action

pursuant to 28 U.S.C. §§1331 and 1338(a).

      4.     The Court has personal jurisdiction over Defendants because, among other things,

Defendants do systematic and continuous business in New York, have performed acts directed at

and causing injury in New York which give rise to this Complaint, and derive substantial revenue from interstate and/or international commerce.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## THE PARTIES

6.      Plaintiff CBS is a corporation organized under the laws of the State of Delaware, with its principal place of business in New York, New York.

7.      Upon information and belief, Defendant CMXLLC is a limited liability company organized under the laws of the State of Delaware, with its principal place of business in Pine Brook, New Jersey.

8.      Upon information and belief, Defendant CMXI is a corporation organized under the laws of the State of Nevada, with its principal place of business in Carson City, Nevada.

9.      Upon information and belief, Defendant Heldman is an individual residing in New Jersey.  Upon information and belief, Heldman is the founder, President, Secretary and sole director of Defendant CMXI, and the founder and managing member of Defendant CMXLLC. Heldman is directly responsible for, and has caused the acts and omissions by CMXI and CMXLLC complained of herein.

## BACKGROUND

### Pertinent Background of the Copyright Acts of 1909 and 1976

10.      Prior to January 1, 1978, U.S. copyright law was governed by the Copyright Act of 1909 (the "1909 Act").  Pursuant to the 1909 Act, federal statutory copyright protection commenced upon the earlier of either (a) publication of a work with proper copyright notice; or (b) registration of the work with the Copyright Office.  The duration of copyright protection under the 1909 Act was for two terms, an original and a renewal term, of 28 years each.

11.     Congress substantially revised U.S. copyright law when it passed the 1976 Act, which became effective on January 1, 1978.  The 1976 Act eliminated the two 28-year term system in favor of a single term lasting the author's life plus fifty years (which was later extended to life plus seventy years).  The 1976 Act essentially retained the two-term system and its related renewal provisions from the 1909 Act for works which had attained U.S. statutory copyright protection prior to January 1, 1978.  The provisions governing these pre-1978 works are contained primarily in Section 304 of the 1976 Act.

12.     Under the 1909 Act and the 1976 Act (up until its amendment in January 1, 1992), a work was required to be registered for renewal in the last year of the original term of copyright in order for the work to be granted the benefit of the renewal term copyright.  If the copyright in the work was not renewed on a timely basis, the work would generally be deemed to have fallen into the public domain in the United States.

13.     A well-settled caveat to this general rule, however, is that where a prior underlying work (or portions of it) that remains protected by statutory copyright is incorporated in a subsequent or derivative work which is not properly renewed, the underlying work (and any portions of it) remains protected by copyright and only those newly-added portions which are original to the derivative work fall into the public domain.  Thus, by way of example, if an underlying novel is copyrighted and properly renewed, the fact that the copyright in a subsequent motion picture based upon the novel is not timely renewed does not mean that any portion (such as the characters or story) of the underlying novel also falls into the public domain.

14.     Effective January 1, 1992, in the Copyright Renewal Act of 1992, Congress amended § 304 (a) of the 1976 Act to eliminate the renewal registration requirement and provide for automatic renewal.  Accordingly, renewal registration was not required for all works whose

renewal term copyrights commenced on or after January 1, 1992 and the failure to make such a renewal did not place the work in the public domain.

**CBS's Copyrights in *The Andy Griffith Show***

15.     CBS owns and controls, and at all times relevant to this Complaint owned and controlled, all copyrights in the episodes of *The Andy Griffith Show*.

16.     *The Andy Griffith Show* was originally broadcast nationwide for eight seasons beginning in the 1960-1961 season and ending in the 1968-1969 season.  A total of 249 episodes were produced by CBS's predecessor-in-interest, Mayberry Enterprises ("Mayberry") and were broadcast.  *The Andy Griffith Show* was also distributed nationwide in syndication.

17.     Mayberry began registering *The Andy Griffith Show* episodes for copyright with the United States Copyright Office (the "Copyright Office") on or about October 5, 1962.  Ultimately, all 249 episodes were registered at various different times in the 1960s, 1970s, and 1990s.  Episodes 1 through 127 (except for nos. 2, 16, and 30) were registered by Mayberry between 1962 and 1965.  Mayberry next registered the copyrights in episodes 190 through 219 in or about 1973.

18.     Viacom International, Inc. ("Viacom"), one of CBS's predecessors-in-interest, acquired the rights to *The Andy Griffith Show* in 1978.  Viacom registered episodes 2, 16 and 30 in 1988 in the name of Mayberry.  Viacom then registered episodes 128 through 189, and 220 through 249 in 1992.

19.     Viacom successfully renewed the copyrights in episodes 1 through 79, and 96 through 174 prior to the expiration of their respective first 28-year term.  Viacom filed renewals for the copyrights in episodes 175 to 235 on March 17, 1997 and episodes 236 to 249 on February 24, 1997.

20.     In March 1997, Paramount Pictures Corporation (successor to Viacom and predecessor-in-interest to CBS) submitted renewal applications for the episodes 80 to 95 of *The Andy Griffith Show*, as well 60 other episodes.  On June 5, 1997, the Copyright Office rejected the renewal applications for 16 episodes, numbers 80 to 95 (referred to herein as the "Middle Episodes"), stating that they could not be accepted for renewal registration because they were "published" in 1963 and could only have been renewed between December 31, 1990 and December 31, 1991.  Accordingly, the newly-added elements, and only the newly-added elements, of these Middle Episodes which did not previously appear in the first 79 episodes of *The Andy Griffith Show* (which remain protected by statutory copyright) have fallen into the public domain in the United States.

21.     CBS (and its predecessors-in-interest) has complied with all relevant provisions of the Copyright Act with respect to the first seventy-nine (79) episodes of *The Andy Griffith Show* identified in Exhibit A hereto (the "Original Episodes") and, as noted therein, has received from the Copyright Office a Certificate of Registration and Renewal Registration for each of the Original Episodes.

22.     The copyrights in the Original Episodes of *The Andy Griffith Show* were timely renewed and currently remain in full effect.

23.     The characters, including but not limited to Sheriff Andy Taylor played by Andy Griffith and Deputy Barney Fife played by Don Knotts, created for and depicted in these Original Episodes of *The Andy Griffith Show*, are independently copyrightable elements of *The Andy Griffith Show*.

24.     As the copyright owner, CBS currently licenses all of the episodes of *The Andy Griffith Show* for broadcast on television and streaming and download on the Internet.  Pursuant

to CBS's licensing program, episodes are generally being broadcast 7 days per week on television stations across the country and on the Me-TV Television Network.

25. Episodes are also licensed to Netflix and Amazon Digital Services, both of which operate popular digital video platforms and make episodes of *The Andy Griffith Show* available through the Internet to users on their paid digital subscription services.

26. CBS also licenses and distributes episodes of *The Andy Griffith Show* for home video release on VHS videocassettes and DVD.

**<u>Defendants' Infringing Conduct</u>**

27. Defendants CMXLLC and CMXI directly or beneficially own and operate the YouTube channel known as the "8thManDVD.com Cartoon Channel" (the "8thManDVD Channel") (https://www.youtube.com/user/8thManDVDcom).

28. Upon information and belief, CMXLLC claims to own the content disseminated on the 8thManDVD Channel, including the episodes of *The Andy Griffith Show* disseminated on the 8thManDVD Channel.

29. On its "About" page (https://www.youtube.com/user/8thManDVDcom/about), the 8thManDVD Channel shows that it has over 100,000 regular subscribers.  However, anyone with access to the Internet, including non-subscribers, can also view content on Defendants' YouTube channel at any time.  According to its "About" page, the 8thManDVD Channel has garnered over 42 million views worldwide.

30. Leveraging this vast network, Defendants have disseminated the Middle Episodes of *The Andy Griffith Show*, without authorization, over the 8thManDVD Channel.

31. On its "About" page, Defendants state that the 8thManDVD Channel "features newly remastered & restored copyrighted cartoons, classic TV and movies such as: Looney

Tunes (Looney Toons), Bugs Bunny, Daffy Duck, Porky Pig, **The Andy Griffith Show**, Popeye the Sailor, Christmas Classics, The Three Stooges, Tobor the 8th Man and more from our library. Many of which are also available from us on Amazon."

32.  On the channel's home page (https://www.youtube.com/user/8thManDVDcom), Defendants similarly state, "This channel features fully remastered classic TV, Film and Cartoons such as: Looney Tunes (Looney Toons), **The Andy Griffith Show**, Popeye the Sailor Man, The Three Stooges, Tobor the 8th Man and more from our library. Many of which are also available from us on DVD, Blu-ray and Digital."

33.  Within the three years prior to the commencement of this action, Defendants have disseminated the Middle Episodes on YouTube as follows:

a.  "THE ANDY GRIFFITH SHOW: High Noon in Mayberry (1963) (Season 3 Episode 17)" has been disseminated by Defendants on YouTube since June 1, 2014, generating 218,493 views;

b.  "THE ANDY GRIFFITH SHOW: The Loaded Goat (1963) (Season 3 Episode 18)" has been disseminated by Defendants on YouTube since June 25, 2014, generating 60,792 views;

c.  "THE ANDY GRIFFITH SHOW: Class Reunion (1963) (Season 3 Episode 19)" has been disseminated by Defendants on YouTube since February 28, 2014, generating 56,323 views;

d.  "THE ANDY GRIFFITH SHOW: Rafe Hollister Sings (1963) (Season 3 Episode 20)" has been disseminated by Defendants on YouTube since October 11, 2014, generating 66,578 views;

e.  "THE ANDY GRIFFITH SHOW: Opie and the Spoiled Kid (1963) (Season 3 Episode 21)" has been disseminated by Defendants on YouTube since May 4, 2014, generating 155,865 views;

f.  "THE ANDY GRIFFITH SHOW: The Great Filling Station Robbery (1963) (Season 3 Episode 22)" has been disseminated by Defendants on YouTube since November 12, 2014, generating 151,592 views;

g.  "THE ANDY GRIFFITH SHOW: Andy Discovers America (1963) (Season 3 Episode 23)" has been disseminated by Defendants on YouTube since February 3, 2015, generating 117,149 views;

h. "THE ANDY GRIFFITH SHOW: Aunt Bee's Medicine Man (1963) (Season 3 Episode 24)" has been disseminated by Defendants on YouTube since February 3, 2015, generating 74,805 views;

i. "THE ANDY GRIFFITH SHOW: The Darlings Are Coming (1963) (Season 3 Episode 25)" has been disseminated by Defendants on YouTube since February 3, 2015, generating 95,263 views;

j. "THE ANDY GRIFFITH SHOW: Andy's English Valet (1963) (Season 3 Episode 26)" has been disseminated by Defendants on YouTube since February 7, 2015, generating 49,719 views;

k. "THE ANDY GRIFFITH SHOW: Barney's First Car (1963) (Season 3 Episode 27)" has been disseminated by Defendants on YouTube since March 19, 2015, generating 240,130 views;

l. "THE ANDY GRIFFITH SHOW: The Rivals (1963) (Season 3 Episode 28)" has been disseminated by Defendants on YouTube since February 7, 2015, generating 188,749 views;

m. "THE ANDY GRIFFITH SHOW: A Wife for Andy (1963) (Season 3 Episode 29)" has been disseminated by Defendants on YouTube since February 7, 2015, generating 115,991 views;

n. "THE ANDY GRIFFITH SHOW: Dogs, Dogs, Dogs (1963) (Season 3 Episode 30)" has been disseminated by Defendants on YouTube since February 7, 2015, generating 86,307 views;

o. "THE ANDY GRIFFITH SHOW: Mountain Wedding (1963) (Season 3 Episode 31)" has been disseminated by Defendants on YouTube since February 7, 2015, generating 223,922 views;

p. "THE ANDY GRIFFITH SHOW: The Big House (1963) (Season 3 Episode 32)" has been disseminated by Defendants on YouTube since February 7, 2015, generating 123,975 views;

q. "THE ANDY GRIFFITH SHOW: TV Advertisments & Commercials" has been disseminated by Defendants on YouTube since May 11, 2015, generating 24,615 views.

34.   Each of these videos was made available to anyone with Internet access, through URLs available (among other places) on Defendants' "playlist" dedicated to *The Andy Griffith Show* (https://www.youtube.com/playlist?list=PLhGipfv0juZULE_NChCLUSV7t5TZ5EdSj).  A printout of this playlist is attached as Exhibit B hereto.

35.     Collectively, Defendants generated a total of over 2 *million* views on YouTube from the dissemination of the foregoing individual Middle Episodes.

36.     Defendants further disseminated on YouTube a 16-episode compilation (available at http://www.youtube.com/watch?v=hF1VKoynBz0), aggregating all of the Middle Episodes of *The Andy Griffith Show*, beginning on July 7, 2015, generating over 500,000 additional views for this compilation.  A screenshot from YouTube showing the aforementioned compilation is attached as Exhibit C hereto.

37.     Defendants have engaged in a pattern and practice of posting episodes of *The Andy Griffith Show* containing  CBS's copyrighted material without license or authorization and have sought to monetize their unauthorized postings and derive revenue therefrom.  Among other things, Defendants have generated substantial revenue from YouTube based on the millions of views Defendants have received from the episodes of *The Andy Griffith Show* they have posted and, upon information and belief, from commercial advertisements sold and embedded into these videos.

38.     These activities were conducted without the authority or consent of CBS, who is the owner of the still valid and existing copyrights in the first 79 Original Episodes of *The Andy Griffith Show* and, consequently, of copyrighted characters and numerous other original creative elements which first appeared in the Original Episodes and which appear in the Middle Episodes of *The Andy Griffith Show* disseminated by Defendants without authorization.

39.     CBS has notified Defendants that its copyrights have been infringed and exploited without authorization.  In fact, CBS sent a DMCA takedown notice to YouTube seeking the removal of Defendants' infringing copy of the 16-episode compilation video aggregating all of *The Andy Griffith Show* Middle Episodes.  YouTube initially complied with this takedown

notice, but Defendants improperly sent a counter-notice seeking the reposting of their unlawful content.

40.     In email and letter communications to CBS, Defendants have claimed that their unauthorized exploitation of *The Andy Griffith Show* episodes is not infringing, because the Middle Episodes they exploit, all of which were created after the 79 Original Episodes, are in the public domain.  Defendants further claimed that they added and "remastered" the Middle Episodes, thereby creating new derivative works that Defendants now claim to own.

41.     However, as CBS has previously notified Defendants, even if the new elements of these Middle Episodes that do not appear in the Original Episodes may be in the public domain, Defendants may not reproduce, distribute, or otherwise exploit these Middle Episodes because they each contain film footage, independently copyrightable characters, and other creative elements which remain protected by the registered and validly renewed copyrights in the first 79 Original Episodes.

42.     As reflected in Defendants' correspondence to CBS, Defendants are fully aware of legal authority directly contradicting their claims, but have deliberately chosen to ignore it.

43.     Upon information and belief, Defendant Heldman, as the founder, officer and/or managing member of Defendants CMXLLC and CMXI has personally orchestrated, controlled, and participated in the unauthorized infringements complained of herein.  Among other things, Heldman: (i) has acted as the ultimate decision-maker for CMXLLC and CMXI and possessed policy-making authority and control over CMXLLC and CMXI; (ii) has exercised direct supervisory responsibility over other employees of CMXLLC and CMXI; (iii) was aware of, personally oversaw, directed and authorized the actions complained of herein; and (iv) has benefited as a direct result of these infringing activities.

## COUNT I
### (Direct Copyright Infringement)
### (Against All Defendants)

44.     CBS repeats and realleges each allegation contained in paragraphs 1 through 43 of this Complaint as if fully set forth herein.

45.     In and during the three-year period preceding the filing of this action, Defendants have reproduced, publicly performed, distributed and/or created derivative works of episodes of *The Andy Griffith Show*.

46.     The episodes of *The Andy Griffith Show* reproduced, publicly performed and distributed by Defendants contain copyrighted characters, film footage, and other creative elements from numerous earlier Original Episodes of *The Andy Griffith Show*, which remain fully protected by CBS's copyrights identified in Exhibit A hereto, and constitute derivative works thereof.

47.     Defendants' exploitation of the Middle Episodes of *The Andy Griffith Show* is without the consent or authorization of CBS.

48.     By virtue of the foregoing, Defendants have infringed, and continue to infringe, CBS's valid and existing copyrights in the episodes of *The Andy Griffith Show* identified in Exhibit A hereto.

49.     Defendants have profited and will continue to profit wrongfully from their infringing conduct.

50.     Defendants' acts of infringement have been and are willful, intentional and purposeful, in disregard of and indifferent to CBS's rights.

51.     As a direct and proximate result of Defendants' infringement of CBS's copyrights and exclusive rights under copyright, CBS is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at CBS's election, pursuant to 17 U.S.C. § 504(b),

CBS is entitled to its actual damages plus Defendants' profits from infringement in an amount to be proven at trial.

52.    CBS is further entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

53.    CBS has been and continues to be irreparably damaged by Defendants' infringing activities and conduct.  Unless Defendants' infringing use of episodes of *The Andy Griffith Show* is enjoined, CBS will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

## COUNT II
### (Contributory Copyright Infringement)
### (Against Heldman)

54.    CBS repeats and realleges each allegation contained in paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.    Within three (3) years of the filing of this Complaint, Defendant Heldman has caused, enabled, induced, facilitated and materially contributed to each act of infringement by Defendants CMXLLC and CMXI.

56.    Defendant Heldman had and has actual and constructive knowledge that the videos disseminated by Defendants CMXLLC and CMXI infringe CBS's exclusive rights to reproduce, prepare derivative works of, publicly perform and distribute the Original Episodes of *The Andy Griffith Show*.

57.    Defendant Heldman's acts of infringement have been and are willful, intentional and purposeful, in disregard of and indifferent to CBS's rights.

58.    As a direct and proximate result of Defendant Heldman's infringement of CBS's copyrights and exclusive rights under copyright, CBS is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at CBS's election, pursuant to 17 U.S.C.

§ 504(b), CBS is entitled to its actual damages plus Defendant Heldman's' profits from infringement in an amount to be proven at trial.

59.     CBS is further entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

60.     CBS has been and continues to be irreparably damaged by Defendants' infringing activities and conduct.  Unless Defendants' infringing use of episodes of *The Andy Griffith Show* is enjoined, CBS will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

**COUNT III**
**(Vicarious Copyright Infringement)**
**(Against Heldman)**

61.     CBS repeats and realleges each allegation contained in paragraphs 1 through 60 of this Complaint as if fully set forth herein.

62.     Defendant Heldman has the right and the ability to control, supervise and/or prevent the acts of infringement by Defendants CMXLLC and CMXI.

63.     Defendant Heldman significantly and directly benefitted from the infringement of the Original Episodes by deriving substantial revenue directly from the infringing conduct of Defendants CMXLLC and CMXI.

64.     Defendant Heldman's acts of infringement have been and are willful, intentional and purposeful, in disregard of and indifferent to CBS's rights.

65.     As a direct and proximate result of Defendant Heldman's infringement of CBS's copyrights and exclusive rights under copyright, CBS is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c).  Alternatively, at CBS's election, pursuant to 17 U.S.C. § 504(b), CBS is entitled to its actual damages plus Defendant Heldman's' profits from infringement in an amount to be proven at trial..

13

66.     CBS is further entitled to its costs, including reasonable attorneys' fees, pursuant to 17 U.S.C. § 505.

67.     CBS has been and continues to be irreparably damaged by Defendants' infringing activities and conduct.  Unless Defendants' infringing use of episodes of *The Andy Griffith Show* is enjoined, CBS will suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

## PRAYER FOR RELIEF

WHEREFORE, CBS demands judgment against Defendants as follows:

A.     For preliminary and permanent injunctive relief restraining and enjoining Defendants, their agents, servants, officers, directors, employees, licensees, partners, successors and assigns, and all persons, firms, corporations or entities acting under their direction, authority or control, and all persons acting in concert or participation with any of them, from directly or indirectly reproducing, preparing derivative works of, publicly performing, distributing or otherwise infringing in any manner any episodes of *The Andy Griffith Show*, and from causing, enabling, facilitating, encouraging, promoting, inducing or participating in any such infringements;

B.     For statutory damages pursuant to 17 U.S.C. § 504(c) of not less than Seven Hundred and Fifty Dollars ($750.00), nor more than One Hundred Fifty Thousand Dollars ($150,000.00) for each of the 79 Original Episodes of The Andy Griffith Show that have been infringed, or alternatively, at CBS's election, to actual damages plus Defendants' profits from their infringement of the episodes of *The*

*Andy Griffith Show* pursuant to 17 U.S.C. § 504(b) in an amount to be proven at trial;

C.      For CBS's costs, including reasonable attorneys' fees, incurred in this action, as provided in 17 U.S.C. § 505;

D.      For prejudgment and post-judgment interest; and

E.      For such other and further relief as the Court deems just, proper, and equitable.

Dated:  New York, New York
        December 2, 2016

                            LOEB & LOEB LLP


                            By:  _/s/ Jonathan Zavin_____
                                Jonathan Zavin
                                Wook Hwang
                                Sasha Segall
                                345 Park Avenue
                                New York, New York 10154
                                (212) 407-4000

                            *Attorneys for Plaintiff CBS Operations Inc.*

100300510